
creditors and other persons and sources (including without limitation any of MLBFS' affiliates) all financial and other information obtained by MLBFS relating to Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

Guarantor agrees that this Guaranty has been entered into voluntarily and that Guarantor has been, or had the right to, representation of counsel of its own choosing prior to the execution of this Guaranty.

This Guaranty shall be governed by the laws of the State of Illinois. WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS. Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of July 30, 2002.

Guarantor:                                          Address:

SAM KOHL

Witness:

Printed Name:

EXHIBIT C

 **Merrill Lynch**

TERM LOAN AND SECURITY AGREEME

TERM LOAN AND SECURITY AGREEMENT dated as of October 11, 2006, between WELKO, INC., a corporation organized and existing under the laws the State of New York having its principal office at 589 Fifth Avenue, New York, NY 10017 ("Customer"), and MERRILL LYNCH BUSINESS FINANCI SERVICES INC., a corporation organized and existing under the laws of the State of Delaware having its principal office at 222 North LaSalle Stre Chicago, IL 60601 ("MLBFS").

In consideration of the mutual covenants of the parties hereto, Customer and MLBFS hereby agree as follows:

### Article I. DEFINITIONS

**1.1 Specific Terms.** In addition to terms defined elsewhere in this Loan Agreement, when used herein the following terms shall have the follow meanings:

"Anti-Terrorism and Anti-Money Laundering Laws" shall mean (a) all applicable laws, regulations, executive orders and government guidance on th prevention and detection of money laundering (including 18 U.S.C. §§ 1956 and 1957), drug trafficking, terrorist-related activities, or financial or other frau (b) the Bank Secrecy Act (31 U.S.C. §§ 5311 et seq. and 12 U.S.C. §§1818(s), 1829(b) and 1951-1959) and its implementing regulations, and (c) regulations and any other requirements of any governmental authority (including, without limitation, the United States Department of the Treasury Office Foreign Assets Control) addressing, relating to, or attempting to eliminate drug trafficking, terrorist acts and acts of war.

"Bankruptcy Event" shall mean any of the following: (i) a proceeding under any bankruptcy, reorganization, arrangement, insolvency, readjustment of de liquidation, winding up or receivership law or statute shall be commenced, filed or consented to by any Credit Party; or (ii) any such proceeding shall be fil against any Credit Party and shall not be dismissed or withdrawn within sixty (60) days after filing; or (iii) any Credit Party shall make a general assignme for the benefit of creditors; or (iv) any Credit Party shall generally fail to pay or admit in writing its inability to pay its debts as they become due; or (v) a Credit Party shall be adjudicated a bankrupt or insolvent; or (vi) any Credit Party shall take advantage of any other law or procedure for the relief of debto or shall take any action for the purpose of or with a view towards effecting any of the foregoing; or (vii) a receiver, trustee, custodian, fiscal agent or simil official for any Credit Party or for any substantial part of any of their respective property or assets shall be sought by such Credit Party or appointed.

"Business Day" shall mean any day other than a Saturday, Sunday, federal holiday or other day on which the New York Stock Exchange is regularly closed

"Business Guarantor" shall mean every Guarantor that is not a natural person.

"Closing Date" shall mean the date upon which all conditions precedent to MLBFS' obligation to make the Loan shall have been met to the satisfaction MLBFS.

"Collateral" shall mean all Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Document Instruments, Investment Property and Financial Assets of Customer, howsoever arising, whether now owned or existing or hereafter acquired or arising, an wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including comput records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds), and th additional collateral described in Section 3.6 (b) hereof.

"Commitment Expiration Date" shall mean ~~October 25, 2006.~~ November 7, 2006 ~~[handwritten]~~ 11/8/06

"Commitment Fee" shall mean a fee of $1,000.00 due to MLBFS in connection with this Loan Agreement.

"Credit Party" and "Credit Parties" shall mean, individually or collectively, the Customer, all Guarantors, and all Pledgors.

"Default" shall mean either an "Event of Default" as defined in Section 3.5 hereof, or an event which with the giving of notice, passage of time, or both, wou constitute such an Event of Default.

"Default Rate" shall mean an annual interest rate equal to the lesser of: (i) two percentage points over the Interest Rate; or (ii) the highest interest rat allowed by applicable law.

"Event of Loss" shall mean the occurrence whereby any tangible Collateral is damaged beyond repair, lost, totally destroyed or confiscated.

"GAAP" shall mean the generally accepted accounting principles in effect in the United States of America from time to time.

"General Funding Conditions" shall mean each of the following conditions to each loan or advance by MLBFS hereunder: (i) no Default or Event of Defau shall have occurred and be continuing or would result from the making of any such loan or advance hereunder by MLBFS; (ii) there shall not have occurred an be continuing any material adverse change in the business or financial condition of any Credit Party; (iii) all representations and warranties of all of th Credit Parties herein or in any of the Loan Documents shall then be true and correct in all material respects; (iv) MLBFS shall have received this Loa Agreement and all of the other Loan Documents, duly executed and filed or recorded where applicable, all of which shall be in form and substanc satisfactory to MLBFS; (v) the Commitment Fee shall have been paid in full; (vi) MLBFS shall have received, as and to the extent applicable, copies o invoices, bills of sale, loan payoff letters and/or other evidence satisfactory to it that the proceeds of the Loan will satisfy the Loan Purpose; (vii) MLBFS sha

1



have received evidence satisfactory to it as to the ownership of the Collateral and the perfection and priority of MLBFS' liens and security interests there as well as the ownership of and the perfection and priority of MLBFS' liens and security interests on any other collateral for the Obligations furnish pursuant to any of the Loan Documents; (viii) MLBFS shall have received evidence satisfactory to it of the insurance required hereby or by any of the L Documents; and (ix) any additional conditions specified in the "Term Loan Approval" letter executed by MLBFS with respect to the transactio contemplated hereby shall have been met to the satisfaction of MLBFS.

"Guarantor" shall mean each Person obligated under a guaranty, endorsement or other undertaking by which such Person guarantees or assum responsibility in any capacity for the payment or performance of any of the Obligations.

"Loan" shall mean a thirty-eight-month term installment loan in an amount equal to the lesser of: (A) 100% of the amount required by Customer to satisfy fulfill the Loan Purpose (B) the aggregate amount which Customer shall request be advanced by MLBFS on account of the Loan Purpose or ( $175,000.00.

"Loan Agreement" shall mean this agreement as titled in the initial paragraph hereof and shall specifically include that number to be designated by MLB as the Customer's "Loan No" in reference to this Loan Agreement, and which number and designation MLBFS shall provide to Customer upon the in invoice generated by MLBFS. At all times thereafter, such numerical loan number shall be included and be deemed to be a part of the title of this Lo Agreement.

"Loan Documents" shall mean this Loan Agreement, any indenture, any guaranty of any of the Obligations and all other security and other instrumen assignments, certificates, certifications and agreements of any kind relating to any of the Obligations, whether obtained, authorized, authenticated, execute sent or received concurrently with or subsequent to this Loan Agreement, or which evidence the creation, guaranty or collateralization of any of th Obligations or the granting or perfection of liens or security interests upon any Collateral or any other collateral for the Obligations, including an modifications, amendments or restatements of the foregoing.

"Loan Purpose" shall mean the purpose for which the proceeds of the Loan will be used; to wit: to pay off a portion of Customer's existing WCMA Line Credit No. 885-07390.

"Location of Tangible Collateral" shall mean the address of Customer set forth at the beginning of this Loan Agreement, together with any other address addresses set forth on an exhibit hereto as being a Location of Tangible Collateral.

"Obligations" shall mean all liabilities, indebtedness and obligations of Customer to MLBFS, howsoever created, arising or evidenced, whether now existin or hereafter arising, whether direct or indirect, absolute or contingent, due or to become due, primary or secondary or joint or several, and, without limitin the generality of the foregoing, shall include principal, accrued interest (including without limitation interest accruing after the filing of any petition in bankruptcy), all advances made by or on behalf of MLBFS under the Loan Documents, collection and other costs and expenses incurred by or on behalf MLBFS, whether incurred before or after judgment, and all present and future liabilities, indebtedness and obligations of Customer under the Note and th Loan Documents.

"Permitted Liens" shall mean with respect to the Collateral: (i) liens for current taxes not yet due and payable, other non-consensual liens arising in th ordinary course of business for sums not due, and, if MLBFS' rights to and interest in the Collateral are not materially and adversely affected thereby, an such liens for taxes or other non-consensual liens arising in the ordinary course of business being contested in good faith by appropriate proceedings; (i liens in favor of MLBFS; (iii) liens which will be discharged with the proceeds of the Loan; and (iv) any other liens expressly permitted in writing by MLBFS.

"Person" shall mean any natural person and any corporation, partnership (general, limited or otherwise), limited liability company, trust, association, join venture, governmental body or agency or other entity having legal status of any kind.

"Pledgor" shall mean each Person who at any time provides collateral, or otherwise now or hereinafter agrees to grants MLBFS a security interest in an assets as security for Customer's Obligations.

"UCC" shall mean the Uniform Commercial Code of Illinois as in effect in Illinois from time to time.

1.2 Other Terms. Except as otherwise defined herein, all terms used in this Loan Agreement which are defined in the UCC shall have the meanings se forth in the UCC; and (iii) accounting terms not defined herein shall have the meaning ascribed to them in GAAP.

1.3 UCC Filing. Customer hereby authorizes MLBFS to file a record or records (as defined or otherwise specified under the UCC), including, without limitation, financing statements, in all jurisdictions and with all filing offices as MLBFS may determine, in its sole discretion, are necessary or advisable to perfect the security interest granted to MLBFS herein. Such financing statements may describe the Collateral in the same manner as described herein or may contain an indication or description of collateral that describes such property in any other manner as MLBFS may determine, in its sole discretion, is necessary, advisable or prudent to ensure the perfection of the security interest in the Collateral granted to the MLBFS herein.

### Article II. THE LOAN

2.1 Commitment. Subject to the terms and conditions hereof, MLBFS hereby agrees to make the Loan to Customer for the Loan Purpose, and Customer agrees to borrow all amounts borrowed to satisfy the Loan Purpose from MLBFS. The entire proceeds of the Loan shall be disbursed on the Closing Date either directly to the applicable third party or parties on account of the Loan Purpose or to reimburse Customer for amounts directly expended by it; all as directed by Customer in a Closing Certificate to be executed by Customer and delivered to MLBFS prior to the Closing Date.


2.2 **Note.** The Loan will be evidenced by and repayable in accordance with that certain Collateral Installment Note made by Customer payable to the order of MLBFS and issued pursuant to this Loan Agreement (the "Note"). The Note is hereby incorporated as a part hereof as if fully set forth herein.

2.3 **Conditions of MLBFS' Obligation.** The Closing Date and MLBFS' obligation to make the Loan on the Closing Date are subject to the prior fulfillment of each of the following conditions: (a) MLBFS shall have received a written request from Customer that the Loan be funded in accordance with the terms hereof, together with a written direction from Customer as to the method of payment and payee(s) of the proceeds of the Loan, which request and direction shall have been received by MLBFS not less than two Business Days prior to any requested funding date; (b) MLBFS shall have received a copy of invoice bills of sale, payoff letters or other applicable evidence reasonably satisfactory to it that the proceeds of the Loan will satisfy or fulfill the Loan Purpose; (c) the Commitment Expiration Date shall not then have occurred; and (d) each of the General Funding Conditions shall then have been met or satisfied to the reasonable satisfaction of MLBFS.

2.4 **Use of Loan Proceeds.** The proceeds of the Loan shall be used by Customer solely for a Loan Purpose, or, with the prior written consent of MLBFS, for other lawful business purposes of Customer not prohibited hereby. Customer agrees that under no circumstances will the proceeds of the Loan be used: (a) for personal, family or household purposes of any person whatsoever, or (b) to purchase, carry or trade in securities, or repay debt incurred to purchase, carry or trade in securities, or (c) unless otherwise consented to in writing by MLBFS, to pay any amount to Merrill Lynch and Co., Inc. or any of its subsidiaries, other than Merrill Lynch Bank USA, Merrill Lynch Bank & Trust Co. or any subsidiary of either of them (including MLBFS and Merrill Lynch Credit Corporation).

2.5 **Commitment Fee.** In consideration of the agreement by MLBFS to extend the Loan to Customer in accordance with and subject to the terms hereof, Customer has paid or shall, on or before the Closing Date pay, the Commitment Fee to MLBFS. Customer acknowledges and agrees that the Commitment Fee has been fully earned by MLBFS, and that it will not under any circumstances be refundable.

**Article III. GENERAL PROVISIONS**

**3.1 REPRESENTATIONS AND WARRANTIES**

Customer represents and warrants to MLBFS that:

(a) **Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws.** Without limiting the generality of any other provision in this Loan Agreement: (i) each Credit Party has taken all reasonable measures, in accordance with all applicable Anti-Terrorism and Anti-Money Laundering Laws with respect to each holder of a direct or indirect interest in such Credit Party, to assure that funds invested by such holders in the Credit Parties are derived from legal sources; (ii) to Customer's knowledge after making due inquiry, neither any of the Credit Parties nor any holder of a direct or indirect interest in the Credit Parties: (a) is under investigation by any governmental authority for, or has ever been charged with, or convicted of, any violation of any Anti-Terrorism and Anti-Money Laundering Laws or any other criminal activity, (b) has been assessed civil penalties under any Anti-Terrorism and Anti-Money Laundering Laws, (c) has had any of its funds seized or forfeited in an action under any Anti-Terrorism and Anti-Money Laundering Laws or (d) is a Person with whom a citizen of the United States is prohibited to engage in transactions pursuant to any Anti-Terrorism and Anti-Money Laundering Laws; (iii) each Credit Party has taken reasonable steps, consistent with industry practice for comparable organizations and in any event as required by law, to ensure that such Credit Parties are and shall be in compliance with all Anti-Terrorism and Anti-Money Laundering Laws; provided however, Sections (i) and (ii) of this provision shall not apply to the extent that such Person's interest is in or through an entity whose securities are traded on a national securities exchange.

(b) **Organization and Existence.** Customer is a corporation, duly organized and validly existing in good standing under the laws of the State of New York and is qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualification necessary.

(c) **Execution, Delivery and Performance.** Each Credit Party has the requisite power and authority to enter into and perform the Loan Documents. The Customer holds all necessary permits, licenses, certificates of occupancy and other governmental authorizations and approvals required in order to own or operate the Customer's business. The execution, delivery and performance by Customer of this Loan Agreement and by each of the other Credit Parties of such of the other Loan Documents to which it is a party: (i) have been duly authorized by all requisite action, (ii) do not and will not violate or conflict with any law, order or other governmental requirement, or any of the agreements, instruments or documents which formed or govern any of the Credit Parties, and (iii) do not and will not breach or violate any of the provisions of, and will not result in a default by any of the Credit Parties under, any other agreement, instrument or document to which it is a party or is subject.

(d) **Notices and Approvals.** Except as may have been given or obtained, no notice to or consent or approval of any governmental body or authority or other third party whatsoever (including, without limitation, any other creditor) is required in connection with the execution, delivery or performance by any Credit Party of such of this Loan Agreement, the Note and the other Loan Documents to which it is a party.

(e) **Enforceability.** The Loan Documents to which any Credit Party is a party are the respective legal, valid and binding obligations of such Credit Party, enforceable against it or them, as the case may be, in accordance with their respective terms, except as enforceability may be limited by bankruptcy and other similar laws affecting the rights of creditors generally or by general principles of equity.

(f) **Collateral.** Except for priorities afforded to any Permitted Liens: (i) Customer has good and marketable title to the Collateral, (ii) none of the Collateral is subject to any lien, encumbrance or security interest, and (iii) upon the filing of all Uniform Commercial Code financing statements authenticated or otherwise authorized by Customer with respect to the Collateral in the appropriate jurisdiction(s) and/or the completion of any other action required by applicable law to perfect its liens and security interests, MLBFS will have valid and perfected first liens and security interests upon all of the Collateral.

3



(g) **Financial Statements.** Except as expressly set forth in Customer's financial statements, all financial statements of Customer furnished to MLBFS h... been prepared in conformity with generally accepted accounting principles, consistently applied, are true and correct in all material respects, and f... present the financial condition of it as at such dates and the results of its operations for the periods then ended (subject, in the case of interim unaudi... financial statements, to normal year-end adjustments); and since the most recent date covered by such financial statements, there has been no mate... adverse change in any such financial condition or operation. All financial statements furnished to MLBFS of any Guarantor are true and correct in all mate... respects and fairly represent such Guarantor's financial condition as of the date of such financial statements, and since the most recent date of s... financial statements, there has been no material adverse change in such financial condition.

(h) **Litigation; Compliance With All Laws.** No litigation, arbitration, administrative or governmental proceedings are pending or, to the knowledge... Customer, threatened against any Credit Party, which would, if adversely determined, materially and adversely affect (i) such Credit Party's interest in... Collateral or the liens and security interests of MLBFS hereunder or under any of the Loan Documents, or (ii) the financial condition of such Credit Party... its continued operations. Each Credit Party is in compliance in all material respects with all laws, regulations, requirements and approvals applicable to s... Credit Party.

(i) **Tax Returns.** All federal, state and local tax returns, reports and statements required to be filed by any Credit Party have been filed with the appropri... governmental agencies and all taxes due and payable by any Credit Party have been timely paid (except to the extent that any such failure to file or pay... not materially and adversely affect (i) either the liens and security interests of MLBFS hereunder or under any of the Loan Documents, (ii) the financ... condition of any Credit Party, or (iii) its continued operations).

(j) **Collateral Location.** All of the tangible Collateral is located at a Location of Tangible Collateral.

(k) **No Default.** No "Default" or "Event of Default" (each as defined in this Loan Agreement or any of the other Loan Documents) has occurred and... continuing.

(l) **No Outside Broker.** Except for employees of MLBFS, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S") or one of their affiliate... Customer has not in connection with the transactions contemplated hereby directly or indirectly engaged or dealt with, and was not introduced or referred... MLBFS by, any broker or other loan arranger.

Each of the foregoing representations and warranties: (i) has been and will be relied upon as an inducement to MLBFS to make the Loan, and (ii)... continuing and shall be deemed remade by Customer on the Closing Date.

## 3.2 FINANCIAL AND OTHER INFORMATION

(a)    Customer shall furnish or cause to be furnished to MLBFS during the term of this Loan Agreement all of the following:

(i)    **Annual Financial Statements.** Within 120 days after the close of each fiscal year of Customer, a copy of the annual reviewed financial statements... Customer, including in reasonable detail, a balance sheet and statement of retained earnings as at the close of such fiscal year and statements of profit a... loss and cash flow for such fiscal year;

(ii)    **Interim Financial Statements.** Within 45 days after the close of each fiscal semi-annual period of Customer, a copy of the interim financial statemen... of Customer for such fiscal semi-annual period (including in reasonable detail both a balance sheet as of the close of such fiscal period, and statement... profit and loss for the applicable fiscal period);

(iii)    **A/R Agings.** Within 45 days after the close of each fiscal semi-annual period of Customer, a copy of the Accounts Receivable Aging of Customer as... the end of such fiscal semi-annual period;

(iv)    **Personal Financial Statements.** Not later than 120 days after the close of each fiscal year of Customer, a current signed financial statement of eac... Individual Guarantor; and

(v)    **Other Information.** Such other information as MLBFS may from time to time reasonably request relating to  Customer, any Credit Party or th... Collateral.

(b)    **General Agreements With Respect to Financial Information.** Customer agrees that except as otherwise specified herein or otherwise agreed to... writing by MLBFS: (i) all annual financial statements required to be furnished by Customer to MLBFS hereunder will be prepared by either the curre... independent accountants for Customer or other independent accountants reasonably acceptable to MLBFS, and (ii) all other financial information required... be furnished by Customer to MLBFS hereunder will be certified as correct in all material respects by the party who has prepared such information, and,... the case of internally prepared information with respect to Customer, certified as correct by its chief financial officer.

## 3.3 OTHER COVENANTS

Customer further agrees during the term of this Loan Agreement that:

(a) **Compliance with Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws.**    Each Credit Party (i) shall take all reasonabl... measures in accordance with all applicable Anti-Terrorism and Anti-Money Laundering Laws with respect to each holder of a direct or indirect interest i... such Credit Party, to assure that funds invested by such holders in the Credit Parties are derived from legal sources; (ii) shall not violate any Anti-Terroris...

4



and Anti-Money Laundering Laws, and (iii) shall take reasonable steps, consistent with industry practice for comparable organizations and in any ever required by law, to ensure that such Credit Parties are and shall be in compliance with all Anti-Terrorism and Anti-Money Laundering Laws; prov. however, Sections (i) and (ii) of this provision shall not apply to the extent that such Person's interest is in or through an entity whose securities are tra on a national securities exchange.

(b) **Financial Records; Inspection.** Each Credit Party (other than any Individual Guarantor) will: (i) maintain at its principal place of business complete accurate books and records, and maintain all of its financial records in a manner consistent with the financial statements heretofore furnished to MLBFS prepared on such other basis as may be approved in writing by MLBFS; and (ii) permit MLBFS or its duly authorized representatives, upon reasona notice and at reasonable times, to inspect its properties (both real and personal), operations, books and records.

(c) **Taxes.** Each Credit Party will pay when due all of its respective taxes, assessments and other governmental charges, howsoever designated, and other liabilities and obligations, except to the extent that any such failure to file or pay will not materially and adversely affect either the liens and secu interests of MLBFS hereunder or under any of the Loan Documents, the financial condition of any Credit Party or its continued operations.

(d) **Compliance With Laws and Agreements.** No Credit Party will violate (i) any law, regulation or other governmental requirement, any judgment or or of any court or governmental agency or authority; (ii) any agreement, instrument or document which is material to its operations or to the operation or use any Collateral, in each case as contemplated by the Loan Documents; or (iii) any agreement, instrument or document to which it is a party or by which i bound, if any such violation will materially and adversely affect either the liens and security interests of MLBFS hereunder or under any of the Lo Documents, the financial condition of any Credit Party, or its continued operations.

(e) **No Use of Merrill Lynch Name.** No Credit Party will directly or indirectly publish, disclose or otherwise use in any advertising or promotional material, press release or interview, the name, logo or any trademark of MLBFS, MLPF&S, Merrill Lynch and Co., Incorporated or any of their affiliates.

(f) **Notification By Customer.** Customer shall provide MLBFS with prompt written notification of: (i) any Default; (ii) any material adverse change in t business, financial condition or operations of any Credit Party; (iii) any information which indicates that any financial statements of any Credit Party fail in a material respect to present fairly the financial condition and results of operations purported to be presented in such statements; (iv) any threatened pending litigation involving any Credit Party; (v) any casualty loss, attachment, lien, judicial process, encumbrance or claim affecting or involving $25,000. or more of any Collateral; and (vi) any change in Customer's outside accountants. Each notification by Customer pursuant hereto shall specify the event information causing such notification, and, to the extent applicable, shall specify the steps being taken to rectify or remedy such event or information.

(g) **Entity Organization.** Each Credit Party which is an entity will (i) remain (A) validly existing and in good standing in the state of its organization and t qualified to do business and in good standing in each other state where the nature of its business or the property owned by it make such qualificati necessary, and (ii) maintain all governmental permits, licenses and authorizations. Customer shall give MLBFS not less than 30 days prior written notice any change in name (including any fictitious name) or chief executive office, place of business, or as applicable, the principal residence.

(h) **Merger, Change in Business.** Except upon the prior written consent of MLBFS, Customer shall not cause or permit any Credit Party to: (i) be a party any merger or consolidation with, or purchase or otherwise acquire all or substantially all of the assets of, or any material stock, partnership, joint venture other equity interest in, any Person, or sell, transfer or lease all or any substantial part of its assets; (ii) engage in any material business substantia different from its business in effect as of the date of application by Customer for credit from MLBFS, or cease operating any such material business; or (i cause or permit any other Person to assume or succeed to any material business or operations of such Credit Party.

(i) **Periodic Clean-Up Period.** Prior to each Maturity Date, Customer shall cause the WCMA Loan Balance to be $600,000.00 and remain at or belo $600,000.00 for at least one consecutive 30-day period.

(j) **EBITDA To Interest Expense.** Customer's "Interest Coverage Ratio" shall at all times exceed 1.25 to 1.00. For purposes hereof, "Interest Coverag Ratio" shall mean the ratio of: (a) income before interest (including payments in the nature of interest under capital leases), taxes, depreciation, amortizatio and other non-cash charges, to (b) Customer's cash interest expense in respect of all indebtedness for borrowed money including that portion of capitalize lease obligations representing the interest factor; all as set forth in Customer's regular annual financial statements prepared in accordance with GAAP.

## 3.4 COLLATERAL

(a) **Pledge of Collateral.** To secure payment and performance of the Obligations, Customer hereby pledges, assigns, transfers and sets over to MLBFS and grants to MLBFS first liens and security interests in and upon all of the Collateral, subject only to priorities afforded to Permitted Liens.

(b) **Liens.** Except upon the prior written consent of MLBFS, Customer shall not create or permit to exist any lien, encumbrance or security interest upon with respect to any Collateral now owned or hereafter acquired other than Permitted Liens.

(c) **Performance of Obligations.** Customer shall perform all of its obligations owing on account of or with respect to the Collateral; it being understood tha nothing herein, and no action or inaction by MLBFS, under this Loan Agreement or otherwise, shall be deemed an assumption by MLBFS of any o Customer's said obligations.

(d) **Sales and Collections.** Customer shall not sell, transfer or otherwise dispose of any Collateral, except that so long as no Event of Default shall hav occurred and be continuing, Customer may in the ordinary course of its business: (i) sell any Inventory normally held by Customer for sale, (ii) use o consume any materials and supplies normally held by Customer for use or consumption, and (iii) collect all of its Accounts.

(e) **Account Schedules.** Upon the request of MLBFS, which may be made from time to time, Customer shall deliver to MLBFS, in addition to the oth information required hereunder, a schedule identifying, for each Account and all Chattel Paper subject to MLBFS' security interests hereunder, each acco debtor by name and address and amount, invoice or contract number and date of each invoice or contract. Customer shall furnish to MLBFS such additio information with respect to the Collateral, and amounts received by Customer as proceeds of any of the Collateral, as MLBFS may from time to tir reasonably request.

(f) **Alterations and Maintenance.** Except upon the prior written consent of MLBFS, Customer shall not make or permit any material alterations to a tangible Collateral which might materially reduce or impair its market value or utility. Customer shall at all times (i) keep the tangible Collateral in goo condition and repair, reasonable wear and tear excepted, (ii) protect the Collateral against loss, damage or destruction and (iii) pay or cause to be paid obligations arising from the repair and maintenance of such Collateral, as well as all obligations with respect to any Location of Tangible Collateral (e.g., obligations under any lease, mortgage or bailment agreement), except for any such obligations being contested by Customer in good faith by appropriat proceedings.

(g) **Location.** Except for movements required in the ordinary course of Customer's business, Customer shall give MLBFS 30 days' prior written notice of th placing at or movement of any tangible Collateral to any location other than a Location of Tangible Collateral. In no event shall Customer cause or perm any material tangible Collateral to be removed from the United States without the express prior written consent of MLBFS. Customer will keep its books an records at its principal office address specified in the first paragraph of this Loan Agreement. Customer will not change the address where books an records are kept, or change its name or taxpayer identification number. Customer will place a legend acceptable to MLBFS on all Chattel Paper that Collateral in the possession or control of Customer from time to time indicating that MLBFS has a security interest therein.

(h) **Insurance.** Customer shall insure all of the tangible Collateral under a policy or policies of physical damage insurance for the full replacement valu thereof against such perils as MLBFS shall reasonably require and also providing that losses will be payable to MLBFS as its interests may appear pursua to a lender's or mortgagee's long form loss payable endorsement and containing such other provisions as may be reasonably required by MLBFS. Custome shall further provide and maintain a policy or policies of commercial general liability insurance naming MLBFS as an additional party insured. Customer sha maintain such other insurance as may be required by law or is customarily maintained by companies in a similar business or otherwise reasonably require by MLBFS. All such insurance policies shall provide that MLBFS will receive not less than 10 days prior written notice of any cancellation, and sha otherwise be in form and amount and with an insurer or insurers reasonably acceptable to MLBFS. Customer shall furnish MLBFS with a copy or certificat of each such policy or policies and, prior to any expiration or cancellation, each renewal or replacement thereof.

(i) **Event of Loss.** Customer shall at its expense promptly repair all repairable damage to any tangible Collateral. In the event that there is an Event of Los and the affected Collateral had a value prior to such Event of Loss of $25,000.00 or more, then, on or before the first to occur of (i) 90 days after th occurrence of such Event of Loss, or (ii) 10 Business Days after the date on which either Customer or MLBFS shall receive any proceeds of insurance o account of such Event of Loss, or any underwriter of insurance on such Collateral shall advise either Customer or MLBFS that it disclaims liability in respec of such Event of Loss, Customer shall, at Customer's option, either replace the Collateral subject to such Event of Loss with comparable Collateral free of a liens other than Permitted Liens (in which event Customer shall be entitled to utilize the proceeds of insurance on account of such Event of Loss for suc purpose, and may retain any excess proceeds of such insurance), or permanently prepay the Obligations by an amount equal to the actual cash value o such Collateral as determined by either the insurance company's payment (plus any applicable deductible) or, in absence of insurance company paymen as reasonably determined by MLBFS; it being further understood that any such permanent prepayment shall cause an immediate permanent reduction i the Loan in the amount of such prepayment and shall not reduce the amount of any future reductions in the Loan that may be required hereunder Notwithstanding the foregoing, if at the time of occurrence of such Event of Loss or any time thereafter prior to replacement or line reduction, as aforesai an Event of Default shall have occurred and be continuing hereunder, then MLBFS may at its sole option, exercisable at any time while such Event o Default shall be continuing, require Customer to either replace such Collateral or prepay the Obligations, as aforesaid.

(j) **Notice of Certain Events.** Customer shall give MLBFS immediate notice of any attachment, lien, judicial process, encumbrance or claim affecting o involving $25,000.00 or more of the Collateral.

(k) **Indemnification.** Customer shall indemnify, defend and save MLBFS harmless from and against any and all claims, liabilities, losses, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) of any nature whatsoever which may be asserted against or incurred b MLBFS arising out of or in any manner occasioned by (i) the ownership, collection, possession, use or operation of any Collateral, or (ii) any failure b Customer to perform any of its obligations hereunder; excluding, however, from said indemnity any such claims, liabilities, etc. arising directly out of th willful wrongful act or active gross negligence of MLBFS. This indemnity shall survive the expiration or termination of this Loan Agreement as to all matter arising or accruing prior to such expiration or termination.

### 3.5 EVENTS OF DEFAULT

The occurrence of any of the following events shall constitute an "Event of Default" under this Loan Agreement:

(a) **Anti-Terrorism, Embargo, Sanctions and Anti-Money Laundering Laws.** (i) Any Credit Party (a) becomes under investigation by any governmenta authority for any violation of any Anti-Terrorism and Anti-Money Laundering Laws, (b) is assessed civil penalties under any Anti-Terrorism and Anti-Money Laundering Laws, (c) has any of its funds seized or forfeited in an action under any Anti-Terrorism and Anti-Money Laundering Laws, or (d) is identified as a Person with whom a citizen of the United States is prohibited to engage in transactions by any Anti-Terrorism and Anti-Money Laundering Laws; (ii) any representation or warranty made by any Credit Party in this Loan Agreement or any of the other Loan Documents with respect to any Anti-Terrorism and Anti-Money Laundering Laws shall at any time prove to have been incorrect when made or (iii) any Credit Party shall default in the performance or observance of any covenant or agreement related to any Anti-Terrorism and Anti-Money Laundering Laws contained in any of the Loan Documents.



(b)  Failure to Pay. Customer shall fail to pay when due any amount owing by Customer to MLBFS under the Note or this Loan Agreement, or shall fai pay when due any other Obligations, and any such failure shall continue for more than five (5) Business Days after written notice thereof shall have be given by MLBFS to Customer.

(c)  Failure to Perform. Any Credit Party shall default in the performance or observance of any covenant or agreement on its part to be performed observed under this Loan Agreement, the Note or any of the other Loan Documents (not constituting an Event of Default under any other clause of t Section), and such default shall continue unremedied for ten (10) Business Days (i) after written notice thereof shall have been given by MLBFS Customer, or (ii) from Customer's receipt of any notice or knowledge of such default from any other source.

(d)  Breach of Warranty. Any representation or warranty made by any Credit Party contained in this Loan Agreement, the Note or any of the other Lo Documents shall at any time prove to have been incorrect in any material respect when made.

(e)  Default Under Other ML Agreement. A default or event of default by any Credit Party shall occur under the terms of any other agreement, instrume or document with or intended for the benefit of MLBFS, MLPF&S or any of their affiliates, and any required notice shall have been given and requir passage of time shall have elapsed.

(f)  Bankruptcy Event. Any Bankruptcy Event shall occur.

(g)  Material Impairment. Any event shall occur which shall reasonably cause MLBFS to in good faith believe that the prospect of full payment performance by the Credit Parties of any of their respective liabilities or obligations under this Loan Agreement, the Note or any of the other Loa Documents or such Guarantor is a party has been materially impaired. The existence of such a material impairment shall be determined in a mann consistent with the intent of Section 1-208 of the UCC.

(h)  Default Under Other Agreements. Any event shall occur which results in any default of any material agreement involving any Credit Party or a agreement evidencing any indebtedness of any Credit Party of $100,000.00 or more.

(i)  Collateral Impairment. The loss, theft or destruction of any Collateral, the occurrence of any material deterioration or impairment of any Collateral any material decline or depreciation in the value or market price thereof (whether actual or reasonably anticipated), which causes any Collateral, in the so opinion of MLBFS, to become unsatisfactory as to value or character, or any levy, attachment, seizure or confiscation of the Collateral which is not releas within ten (10) Business Days.

(j)  Contested Obligation. (i) Any of the Loan Documents shall for any reason cease to be, or are asserted by any Credit Party not to be a legal, valid a binding obligations of any Credit Party, enforceable in accordance with their terms; or (ii) the validity, perfection or priority of MLBFS' first lien and secur interest on any of the Collateral is contested by any Person; or (iii) any Credit Party shall or shall attempt to repudiate, revoke, contest or dispute, in whole in part, such Credit Party's obligations under any Loan Document.

(k)  Judgments. A judgment shall be entered against any Credit Party in excess of $25,000.00 and the judgment is not paid in full and discharged, stayed and bonded to the satisfaction of MLBFS.

(l)  Change in Control/Change in Management. (i) Any direct or indirect sale, conveyance, assignment or other transfer of or grant of a security intere in any ownership interest of any Credit Party which results, or if any rights related thereto were exercised would result, in any change in the identity of th individuals or entities previously in control of any Credit Party; or (ii) the owner(s) of the controlling equity interest of any Credit Party on the date hereof sh cease to own and control such Credit Party; or (iii) the Person (or a replacement who is satisfactory to MLBFS in its sole discretion) who is the chie executive officer or holds such similar position, or any senior manager of such Credit Party on the date hereof shall for any reason cease to be the chie executive officer or senior manager of the Customer.

(m)  Withdrawal, Death, etc. The incapacity, death, withdrawal, dissolution, or the filing for dissolution of: (i) any Credit Party; or (ii) any controllin shareholder, partner, or member of any Credit Party.

## 3.6 REMEDIES

(a) Remedies Upon Default. Upon the occurrence and during the continuance of any Event of Default, MLBFS may at its sole option do any one or more all of the following, at such time and in such order as MLBFS may in its sole discretion choose:

(i) Termination. MLBFS may without notice terminate its obligation to extend any credit to or for the benefit of Customer (it being understood, however, th upon the occurrence of any Bankruptcy Event all such obligations shall automatically terminate without any action on the part of MLBFS).

(ii) Acceleration. MLBFS may declare the principal of and interest and any premium on the Note, and all other Obligations to be forthwith due and payabl whereupon all such amounts shall be immediately due and payable, without presentment, demand for payment, protest and notice of protest, notice o dishonor, notice of acceleration, notice of intent to accelerate or other notice or formality of any kind, all of which are hereby expressly waived; provide however, that upon the occurrence of any Bankruptcy Event all such principal, interest, premium and other Obligations shall automatically become due an payable without any action on the part of MLBFS.

(iii) Exercise Other Rights. MLBFS may exercise any or all of the remedies of a secured party under applicable law and in equity, including, but not limite to, the UCC, and any or all of its other rights and remedies under the Loan Documents.



(iv) **Possession.** MLBFS may require Customer to make the Collateral and the records pertaining to the Collateral available to MLBFS at a place designat by MLBFS which is reasonably convenient to Customer, or may take possession of the Collateral and the records pertaining to the Collateral without the u of any judicial process and without any prior notice to Customer.

(v) **Sale.** MLBFS may sell any or all of the Collateral at public or private sale upon such terms and conditions as MLBFS may reasonably deem prop whether for cash, on credit, or for future delivery, in bulk or in lots. MLBFS may purchase any Collateral at any such sale free of Customer's right redemption, if any, which Customer expressly waives to the extent not prohibited by applicable law. The net proceeds of any such public or private sale a all other amounts actually collected or received by MLBFS pursuant hereto, after deducting all costs and expenses incurred at any time in the collection the Obligations and in the protection, collection and sale of the Collateral, will be applied to the payment of the Obligations, with any remaining procee paid to Customer or whoever else may be entitled thereto, and with Customer and each Guarantor remaining jointly and severally liable for any amou remaining unpaid after such application.

(vi) **Delivery of Cash, Checks, Etc.** MLBFS may require Customer to forthwith upon receipt, transmit and deliver to MLBFS in the form received, all cas checks, drafts and other instruments for the payment of money (properly endorsed, where required, so that such items may be collected by MLBFS) whic may be received by Customer at any time in full or partial payment of any Collateral, and require that Customer not commingle any such items which may l so received by Customer with any other of its funds or property but instead hold them separate and apart and in trust for MLBFS until delivery is made MLBFS.

(vii) **Notification of Account Debtors.** MLBFS may notify any account debtor that its Account or Chattel Paper has been assigned to MLBFS and dire such account debtor to make payment directly to MLBFS of all amounts due or becoming due with respect to such Account or Chattel Paper; and MLBF may enforce payment and collect, by legal proceedings or otherwise, such Account or Chattel Paper.

(viii) **Control of Collateral.** MLBFS may otherwise take control in any lawful manner of any cash or non-cash items of payment or proceeds of Collateral ar of any rejected, returned, stopped in transit or repossessed goods included in the Collateral and endorse Customer's name on any item of payment or proceeds of the Collateral.

(b) **Set-Off.** MLBFS shall have the further right upon the occurrence and during the continuance of an Event of Default to set-off, appropriate and app toward payment of any of the Obligations, in such order of application as MLBFS may from time to time and at any time elect, any cash, credit, deposit accounts, financial assets, investment property, securities and any other property of Customer which is in transit to or in the possession, custody or contr of MLBFS, MLPF&S or any agent, bailee, or affiliate of MLBFS or MLPF&S. Customer hereby collaterally assigns and grants to MLBFS a continuing securi interest in all property as Collateral and as additional security for the Obligations. Upon the occurrence and during the continuance of an Event Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, withou limitation, the UCC.

(c) **Power of Attorney.** Effective upon the occurrence and during the continuance of an Event of Default, Customer hereby irrevocably appoints MLBFS a its attorney-in-fact, with full power of substitution, in its place and stead and in its name or in the name of MLBFS, to from time to time in MLBFS' sol discretion take any action and to execute any instrument which MLBFS may deem necessary or advisable to accomplish the purposes of this Loa Agreement and the other Loan Documents, including, but not limited to, to receive, endorse and collect all checks, drafts and other instruments for th payment of money made payable to Customer included in the Collateral. The powers of attorney granted to MLBFS in this Loan Agreement are coupled wit an interest and are irrevocable until the Obligations have been indefeasibly paid in full and fully satisfied and all obligations of MLBFS under this Loa Agreement have been terminated.

(d) **Remedies are Severable and Cumulative.** All rights and remedies of MLBFS herein are severable and cumulative and in addition to all other rights an remedies available in the Note, the other Loan Documents, at law or in equity, and any one or more of such rights and remedies may be exercised simultaneously or successively.

(e) **No Marshalling.** MLBFS shall be under no duty or obligation to (i) preserve, protect or marshall the Collateral; (ii) preserve or protect the rights of an Credit Party or any other Person claiming an interest in the Collateral; (iii) realize upon the Collateral in any particular order or manner, (iv) seek repaymen of any Obligations from any particular source; (v) proceed or not proceed against any Credit Party pursuant to any guaranty or security agreement or agains any Credit Party under the Loan Documents, with or without also realizing on the Collateral; (vi) permit any substitution or exchange of all or any part of th Collateral; or (vii) release any part of the Collateral from the Loan Agreement or any of the other Loan Documents, whether or not such substitution o release would leave MLBFS adequately secured.

(f) **Notices.** To the fullest extent permitted by applicable law, Customer hereby irrevocably waives and releases MLBFS of and from any and all liabilities an penalties for failure of MLBFS to comply with any statutory or other requirement imposed upon MLBFS relating to notices of sale, holding of sale or reporting of any sale, and Customer waives all rights of redemption or reinstatement from any such sale. Any notices required under applicable law shall be reasonably and properly given to Customer if given by any of the methods provided herein at least 5 Business Days prior to taking action. MLBFS shall have the right to postpone or adjourn any sale or other disposition of Collateral at any time without giving notice of any such postponed or adjourned date. In th event MLBFS seeks to take possession of any or all of the Collateral by court process, Customer further irrevocably waives to the fullest extent permitted b law any bonds and any surety or security relating thereto required by any statute, court rule or otherwise as an incident to such possession, and any deman for possession prior to the commencement of any suit or action.

### 3.7 MISCELLANEOUS

(a)    **Non-Waiver.** No failure or delay on the part of MLBFS in exercising any right, power or remedy pursuant to this Loan Agreement, the Note or any the other Loan Documents shall operate as a waiver thereof, and no single or partial exercise of any such right, power or remedy shall preclude any other further exercise thereof, or the exercise of any other right, power or remedy. Neither any waiver of any provision of this Loan Agreement, the Note or any the other Loan Documents, nor any consent to any departure by Customer therefrom, shall be effective unless the same shall be in writing and signed MLBFS. Any waiver of any provision of this Loan Agreement, the Note or any of the other Loan Documents and any consent to any departure by Custom from the terms of this Loan Agreement, the Note or any of the other Loan Documents shall be effective only in the specific instance and for the spec purpose for which given. Except as otherwise expressly provided herein, no notice to or demand on Customer shall in any case entitle Customer to a other or further notice or demand in similar or other circumstances.

(b)    **Disclosure.** Customer hereby irrevocably authorizes MLBFS and each of its affiliates, including without limitation MLPF&S, to at any time (whether not an Event of Default shall have occurred) obtain from and disclose to each other, and to any third party in connection with Section 3.7 (h) herein, any a all financial and other information about Customer. Customer further irrevocably authorizes MLBFS to contact, investigate, inquire and obtain consum reports, references and other information on Customer from consumer reporting agencies and other credit reporting services, former or current creditor and other persons and sources (including, without limitation, any Affiliate of MLBFS) and to provide to any references, consumer reporting agencies, cre reporting services, creditors and other persons and sources (including, without limitation, Affiliates of MLBFS) all financial, credit and other informatic obtained by MLBFS relating to the Customer.

(c)    **Communications.** Delivery of an agreement, instrument or other document may, at the discretion of MLBFS, be by electronic transmission. Except required by law or otherwise provided herein or in a writing executed by the party to be bound, all notices, demands, requests, accountings, listing statements, advices or other communications to be given under the Loan Documents shall be in writing, and shall be served either personally, by depos with a reputable overnight courier with charges prepaid, or by deposit in the United States mail by certified mail return receipt required. Notices may b addressed to Customer as set forth at its address shown in the preamble hereto, or to any office to which billing or account statements are sent; to MLBF at its address shown in the preamble hereto, or at such other address designated in writing by MLBFS. Any such communication shall be deemed to hav been given upon, in the case of personal delivery the date of delivery, one Business Day after deposit with an overnight courier, two (2) Business Days aft deposit in the United States by certified mail (return receipt required), or receipt of electronic transmission (which shall be presumed to be three hours aft the time of transmission unless an error message is received by the sender), except that any notice of change of address shall not be effective until actua received.

(d)    **Fees, Expenses and Taxes.** Customer shall upon demand pay or reimburse MLBFS for: (i) all UCC, real property or other filing, recording and searc fees and expenses incurred by MLBFS in connection with the verification, perfection or preservation of MLBFS' rights hereunder or in any Collateral or an other collateral for the Obligations; (ii) any and all stamp, transfer, mortgage, intangible, document, filing, recording and other taxes and fees payable o determined to be payable in connection with the borrowings hereunder or the execution, delivery, filing and/or recording of the Loan Documents and i other instruments or documents provided for herein or delivered or to be delivered hereunder or in connection herewith; and (iii) all fees and out-of-pock expenses (including attorneys' fees and legal expenses) incurred by MLBFS in connection with the preparation, execution, administration, collection enforcement, protection, waiver or amendment of this Loan Agreement, or under any of the other Loan Documents and such other instruments o documents, and the rights and remedies of MLBFS thereunder and all other matters in connection therewith. The obligations of Customer under thi paragraph shall survive the expiration or termination of this Loan Agreement and the discharge of the other Obligations.

(e)    **Right to Perform Obligations.** If Customer shall fail to do any act or thing which it has covenanted to do under this Loan Agreement or any of th Loan Documents, or any representation or warranty on the part of Customer contained in this Loan Agreement or any of the Loan Documents shall b breached, MLBFS may, in its sole discretion, after 5 Business Days written notice is sent to Customer (or such lesser notice, including no notice, as i reasonable under the circumstances), do the same or cause it to be done or remedy any such breach, and may expend its funds for such purpose. Any an all reasonable amounts so expended by MLBFS shall be repayable to MLBFS by Customer upon demand, with interest at the "Interest Rate" (as that item i defined in the Note) during the period from and including the date funds are so expended by MLBFS to the date of repayment, and all such amounts shall b additional Obligations. The payment or performance by MLBFS of any of Customer's obligations hereunder shall not relieve Customer of said obligations o of the consequences of having failed to pay or perform the same, and shall not waive or be deemed a cure of any Default.

(f)    **Late Charge.** Any payment required to be made by Customer pursuant to this Loan Agreement or any of the Loan Documents not paid within ten (10 days of the applicable due date shall be subject to a late charge in an amount equal to the lesser of: (i) 5% of the overdue amount, or (ii) the maximum amount permitted by applicable law. Such late charge shall be payable on demand.

(g)    **Further Assurances.** Customer agrees to do such further acts and things and to execute and deliver to MLBFS such additional agreements instruments and documents as MLBFS may reasonably require or deem advisable to effectuate the purposes of this Loan Agreement, the Note or any of th other Loan Documents, or to establish, perfect and maintain MLBFS' security interests and liens upon the Collateral, including, but not limited to: (i) executing financing statements or amendments thereto when and as reasonably requested by MLBFS; and (ii) if in the reasonable judgment of MLBFS it i required by local law, causing the owners and/or mortgagees of the real property on which any Collateral may be located to execute and deliver to MLBFS waivers or subordinations reasonably satisfactory to MLBFS with respect to any rights in such Collateral.

(h)    **Binding Effect.** This Loan Agreement, the Note and the other Loan Documents shall be binding upon, and shall inure to the benefit of MLBFS Customer and their respective successors and assigns. MLBFS reserves the right, at any time while the Obligations remain outstanding, to sell, assign syndicate or otherwise transfer or dispose of any or all of MLBFS' rights and interests under the Loan Documents. MLBFS also reserves the right at an time to pool the Loan with one or more other loans originated by MLBFS or any other Person, and to securitize or offer interests in such pool on whateve terms and conditions MLBFS shall determine. Customer consents to MLBFS releasing financial and other information regarding Credit Parties, the



Collateral and the Loan in connection with any such sale, pooling, securitization or other offering. Customer shall not assign any of its rights or delegate a of its obligations under this Loan Agreement, the Note or any of the other Loan Documents without the prior written consent of MLBFS. Unless otherwi expressly agreed to in a writing signed by MLBFS, no such consent shall in any event relieve Customer of any of its obligations under this Loan Agreeme the Note or any of the other Loan Documents.

(i)  **Interpretation; Construction.** (i) Captions and section and paragraph headings in this Loan Agreement are inserted only as a matter of convenienc and shall not affect the interpretation hereof; (ii) no provision of this Loan Agreement shall be construed against a particular Person or in favor of anoth Person merely because of which Person (or its representative) drafted or supplied the wording for such provision; and (iii) where the context requires: ( use of the singular or plural incorporates the other, and (b) pronouns and modifiers in the masculine, feminine or neuter gender shall be deemed to refer or include the other genders.

(j)  **Governing Law.** This Loan Agreement, the Note and, unless otherwise expressly provided therein, each of the other Loan Documents, shall t governed in all respects by the laws of the State of Illinois, not including its conflict of law provisions.

(k)  **Severability of Provisions.** Whenever possible, each provision of this Loan Agreement, the Note and the other Loan Documents shall be interpret in such manner as to be effective and valid under applicable law. Any provision of this Loan Agreement, the Note or any of the other Loan Documents whic is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability witho invalidating the remaining provisions of this Loan Agreement, the Note and the other Loan Documents or affecting the validity or enforceability of suc provision in any other jurisdiction.

(l)  **Term.** This Loan Agreement shall become effective when accepted by MLBFS at its office in Chicago, Illinois, and subject to the terms hereof, sh continue in effect so long thereafter as there shall be any moneys owing hereunder or under the Note, or there shall be any other Obligations outstandin Customer hereby waives notice of acceptance of this Loan Agreement by MLBFS.

(m)  **Exhibits.** The exhibits to this Loan Agreement are hereby incorporated and made a part hereof and are an integral part of this Loan Agreement.

(n)  **Counterparts.** This Loan Agreement may be executed in one or more counterparts which, when taken together, constitute one and the sam agreement.

(o)  **Jurisdiction; Waiver.** Customer acknowledges that this Loan Agreement is being accepted by MLBFS in partial consideration of MLBFS right and option, in its sole discretion, to enforce the Loan Documents in either the State of Illinois or in any other jurisdiction where Customer any Collateral may be located. Customer irrevocably submits itself to jurisdiction in the State of Illinois and venue in any state or federal court the County of Cook for such purposes, and Customer waives any and all rights to contest said jurisdiction and venue and the convenience of ar such forum, and any and all rights to remove such action from state to federal court. Customer further waives any rights to commence any actio against MLBFS in any jurisdiction except in the County of Cook and State of Illinois. Customer agrees that all such service of process shall b made by mail or messenger directed to it in the same manner as provided for notices to Customer in this Loan Agreement and that service s made shall be deemed to be completed upon the earlier of actual receipt or three (3) days after the same shall have been posted to Customer o Customer's agent. Nothing contained herein shall affect the right of MLBFS to serve legal process in any other manner permitted by law or affec the right of MLBFS to bring any action or proceeding against Customer or its property in the courts of any other jurisdiction. Customer waive to the extent permitted by law, any bond or surety or security upon such bond which might, but for this waiver, be required of MLBFS. Custome further waives the right to bring any non-compulsory counterclaims.

(p)  **Jury Waiver.** MLBFS and Customer hereby each expressly waive any and all rights to a trial by jury in any action, proceeding o counterclaim brought by either of the parties against the other party with respect to any matter relating to, arising out of or in any way connecte with the Loan, the Obligations, this Loan Agreement, any of the other Loan Documents and/or any of the transactions which are the subjec matter of this Loan Agreement.

(q)  **Integration.** This Loan Agreement, together with the other Loan Documents, constitutes the entire understanding and represents the full an final agreement between the parties with respect to the subject matter hereof, and may not be contradicted by evidence of prior writte agreements or prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements of the partie Without limiting the foregoing, Customer acknowledges that: (i) no promise or commitment has been made to it by MLBFS, MLPF&S or any o their respective employees, agents or representatives to make any Loan on any terms other than as expressly set forth herein, or to make an other loan or otherwise extend any other credit to Customer or any other party; and (ii) except as otherwise expressly provided herein, this Loa Agreement supersedes and replaces any and all proposals, letters of intent and approval and commitment letters from MLBFS to Customer, non of which shall be considered a Loan Document. No amendment or modification of any of the Loan Documents to which Customer is a party sha be effective unless in a writing signed by both MLBFS and Customer.

(r)  **Survival.** All representations, warranties, agreements and covenants contained in the Loan Documents shall survive the signing and delivery of th Loan Documents, and all of the waivers made and indemnification obligations undertaken by Customer shall survive the termination, discharge o cancellation of the Loan Documents.

(s)  **Customer's Acknowledgments.** The Customer acknowledges that the Customer: (i) has had ample opportunity to consult with counsel and suc other parties as deemed advisable prior to signing and delivering this Loan Agreement and the other Loan Documents; (ii) understands the provisions of th Loan Agreement and the other Loan Documents, including all waivers contained therein; and (iii) signs and delivers this Loan Agreement and the other Loa Documents freely and voluntarily, without duress or coercion.

This Loan Agreement and the other Loan Documents are executed under seal and are intended to take effect as sealed instruments.

IN WITNESS WHEREOF, this Loan Agreement has been executed as of the day and year first above written.

WELKO, INC.

By: _____    _____
          Signature (1)                                Signature (2)

          _____    _____
          Printed Name     Sam Kohl L                  Printed Name

          _____    _____
          Title     PRES                               Title

Accepted at Chicago, Illinois:
MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

By: _____

11

## EXHIBIT A

ATTACHED TO AND HEREBY MADE A PART OF TERM LOAN AND SECURITY AGREEMENT DATED AS OF OCTOBER 11, 2006 BETWEE
MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. AND WELKO, INC.

Additional Locations of Tangible Collateral:

EXHIBIT D

**Merrill Lynch**

$175,000.00                                                                                                                    October 11, 2

## COLLATERAL INSTALLMENT NOTE

FOR VALUE RECEIVED, WELKO, INC., a corporation organized and existing under the laws of the State of New York ("Customer") hereby promises to p to the order of MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC., a corporation organized and existing under the laws of the State of Delawa ("MLBFS"), in lawful money of the United States, the principal sum of One Hundred Seventy-Five Thousand And 00/100 Dollars ($175,000.00), or if more less, the aggregate amount advanced by MLBFS to Customer pursuant to the Loan Agreement (the "Loan Amount"); together with interest on the unpa balance of the Loan Amount, from the Closing Date until payment, at the Interest Rate, as follows:

1. DEFINITIONS.

(a) In addition to terms defined elsewhere in this Note, as used herein, the following terms shall have the following meanings:

(i) "Closing Date" shall mean the date of advancement of funds hereunder.

(ii) "Excess Interest" shall mean any amount or rate of interest (including the Default Rate and, to the extent that they may be deemed to constitute interes any prepayment fees, late charges and other fees and charges) payable, charged or received in connection with any of the Loan Documents which exceed the maximum amount or rate of interest permitted under applicable law.

(iii) "Interest Rate" shall mean a variable per annum rate of interest equal to the sum of 3.15%, plus the One-Month LIBOR. "One-Month LIBOR" shall mea as of the date of any determination, the interest rate then most recently published in the "Money Rates" section of *The Wall Street Journal* as the one-mont London Interbank Offered Rate (or if more than one such rate is published, the highest of such rates). The Interest Rate will change as of the date o publication in *The Wall Street Journal* of a One-Month LIBOR that is different from that published on the preceding Business Day. In the event that *The Wa Street Journal* shall, for any reason, fail or cease to publish the One-Month LIBOR, MLBFS will choose a reasonably comparable index or source to use a the basis for the Interest Rate.

(iv) "Loan Agreement" shall mean that certain TERM LOAN AND SECURITY AGREEMENT dated as of the date hereof between Customer and MLBFS, a the same may have been or may hereafter be amended or supplemented.

(v) "Note" shall mean this COLLATERAL INSTALLMENT NOTE

(b) Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Agreement. Without limiting the foregoing, the term "Loan Documents", "Bankruptcy Event" and "Event of Default" shall have the respective meanings set forth in the Loan Agreement.

2. PAYMENT AND OTHER TERMS Customer shall pay the indebtedness under this Note in 38 consecutive monthly installments commencing on the first day of the second calendar month following the Closing Date and continuing on the first day of each calendar month thereafter until this Note shall be paid in full. The first 2 installments following the Closing Date shall be in an amount equal to accrued interest (with the first such installment including interest accrued from the date of funding). Commencing on the first day of the ~~third~~ calendar month immediately following the Closing Date, Customer shall pay 36 consecutive monthly installments, each in an amount equal to the sum of (i) accrued interest, and (ii) 1/36th of the Loan Amount, with the last installment in a an amount equal to the sum of all accrued interest hereunder, the then unpaid principal balance hereof and all other sums payable hereunder.    *fourth* (x)

Each payment received hereunder shall be applied *first* to any fees and expenses of MLBFS payable by Customer under the terms of the Loan Agreement (including, without limitation, late charges), *next* to accrued interest at the Interest Rate, *with the balance* applied on account of the unpaid principal hereof, or in such other manner as the holder hereof may hereinafter determine from time to time for the allocation of such payments thereof. Any part of the principal hereof or interest hereon or other sums payable hereunder or under the Loan Agreement not paid within ten (10) days of the applicable due date shall be subject to a late charge equal to the lesser of (i) 5% of the overdue amount, or (ii) the maximum amount permitted by law. All interest shall accrue daily on the outstanding balance and be computed on the basis of actual days elapsed over a 360-day year. All sums payable hereunder shall be payable at 2356 Collections Center Drive, Chicago, Illinois 60693, or at such other place or places as the holder hereof may from time to time appoint in writing.

Customer may prepay this Note at any time in whole or in part without premium or penalty. Any partial prepayment shall be applied to installments of the Loan Amount in inverse order of maturity.

This Note is the Collateral Installment Note referred to in, and is entitled to all of the benefits of the Loan Agreement and any Loan Documents. If Customer shall fail to pay when due any installment or other sum due hereunder, and any such failure shall continue for more than five (5) Business Days after written notice thereof shall have been given by the holder hereof to Customer, or if any other Event of Default shall have occurred and be continuing, then at the option of the holder hereof (or, upon the occurrence of any Bankruptcy Event, automatically, without any action on the part of the holder hereof), and in addition to all other rights and remedies available to such holder under the Loan Agreement, any Loan Documents, and otherwise, the entire Loan Amount at such time remaining unpaid, together with accrued interest thereon and all other sums then owing by Customer under the Loan Agreement, may be declared to be and thereby become immediately due and payable.


It is expressly understood, however, that nothing contained in the Loan Agreement, any other agreement, instrument or document executed by Customer, otherwise, shall affect or impair the right, which is unconditional and absolute, of the holder hereof to enforce payment of all sums due under this Note at after maturity, whether by acceleration or otherwise, or shall affect the obligation of Customer, which is also unconditional and absolute, to pay the sur payable under this Note in accordance with its terms. Except as otherwise expressly set forth herein or in the Loan Agreement, Customer hereby waiv presentment, demand for payment, protest and notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notic and formalities in connection with this Note.

Wherever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision this Note shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidati the remainder of such provision or the remaining provisions of this Note. Notwithstanding any provision to the contrary in this Note, the Loan Agreement or a of the Loan Documents, no provision of this Note, the Loan Agreement or any of the Loan Documents shall require the payment or permit the collection Excess Interest. If any Excess Interest is provided for, or is adjudicated as being provided for, in this Note, the Loan Agreement or any of the Loan Documen then: (a) Customer shall not be obligated to pay any Excess Interest; and (b) any Excess Interest that MLBFS may have received under any of the Loa Documents shall, at the option of MLBFS, either be applied as a credit against the then unpaid principal balance of this Note, or accrued interest hereon (not exceed the maximum amount permitted by law), or refunded to the Customer.

Upon the occurrence and during the continuance of any Default, but without limiting the rights and remedies otherwise available to MLBFS hereunder waiving such Default, the interest payable by Customer hereunder shall at the option of MLBFS accrue and be payable at the Default Rate. The Defa Rate, once implemented, shall continue to apply to the Obligations under this Note, the Loan Agreement or any of the Loan Documents and be payable Customer until the date MLBFS gives written notice (which shall not be unreasonably delayed or withheld) that such Default has been cured to th satisfaction of MLBFS.

This Note shall be construed in accordance with the laws of the State of Illinois and may be enforced by the holder hereof in any jurisdiction in which th Loan Agreement may be enforced.

IN WITNESS WHEREOF, this Note has been executed by Customer as of the day and year first above written.

WELKO, INC.

By: _____          _____
          Signature (1)                                    Signature (2)

     Sam Kowl_____          _____
          Printed Name                                    Printed Name

     Pres_____          _____
            Title                                         Title


**Merrill Lynch**

SECRETARY'S CERTIFICA

The undersigned hereby certifies to MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. that the undersigned is the duly appointed and ac
Secretary (or Assistant Secretary) of WELKO, INC., a corporation duly organized, validly existing and in good standing under the laws of the State of N
York; and that the following is a true, accurate and compared transcript of resolutions duly, validly and lawfully adopted on the 27 day
+ October , 2006 by the Board of Directors of said Corporation acting in accordance with the laws of the state of incorporation and the cha
and by-laws of said Corporation:

"RESOLVED, that this Corporation is authorized and empowered, now and from time to time hereafter, to borrow and/or obtain credit from, and/or enter into other finan
arrangements with, MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. ("MLBFS"), and in connection therewith to grant to MLBFS liens and security interests on
or all property belonging to this Corporation; all such transactions to be on such terms and conditions as may be mutually agreed from time to time between this Corporat
and MLBFS; and

"FURTHER RESOLVED , that the President, any Vice President, Treasurer, Secretary or other officer of this Corporation, or any one or more of them, be and each of the
hereby is authorized and empowered to: (a) execute and deliver to MLBFS on behalf of this Corporation any and all loan agreements, promissory notes, security agreeme
pledge agreements, financing statements, mortgages, deeds of trust, leases and/or other agreements, instruments and documents required by MLBFS in connecti
therewith, and any present or future extensions, amendments, supplements, modifications and restatements thereof, all in such form as any such officer shall approve,
conclusively evidenced by his or her signature thereon, and (b) do and perform all such acts and things deemed by any such officer to be necessary or advisable to carry
and perform the undertakings and agreements of this Corporation in connection therewith; and any and all prior acts of each of said officers in these premises are here
ratified and confirmed in all respects; and

"FURTHER RESOLVED , that MLBFS is authorized to rely upon the foregoing resolutions until it receives written notice of any change or revocation from an authorized offic
of this Corporation, which change or revocation shall not in any event affect the obligations of this Corporation with respect to any transaction conditionally agreed or committ
to by MLBFS or having its inception prior to the receipt of such notice by MLBFS."

The undersigned further certifies that: (a) the foregoing resolutions have not been rescinded, modified or repealed in any manner, are not in conflict wi
any agreement of said Corporation and are in full force and effect as of the date of this Certificate, and (b) the following individuals are now the duly electe
and acting officers of said Corporation and the signatures set forth below are the true signatures of said officers:

President: _____

Vice President: _____

Treasurer: _____

Secretary: _____

_PRES_ : _____
Additional Title

IN WITNESS WHEREOF, the undersigned has executed this Certificate and has affixed the seal of said Corporation hereto, pursuant to due authorizatio
all as of this 27 day of October , 2006.

_____
Secretary

(Corporate Seal)

Printed Name: _____

 **Merrill Lynch**

SECRETARY'S CERTIFICATI

The undersigned hereby certifies to MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. that the undersigned is the duly appointed and acting Secretary (or Assistant Secretary) of Weiko, Inc., a corporation duly organized, validly existing and in good standing under the laws of the State of New York and that the following is a true, accurate and compared transcript of resolutions duly, validly and lawfully adopted on the ___ day of _____, 2002 by the Board of Directors of said Corporation acting in accordance with the laws of the state of incorporation and the charter and by-laws of said Corporation:

"RESOLVED, that this Corporation is authorized and empowered, now and from time to time hereafter, to borrow and/or obtain credit from, and/or enter into other financial arrangements with, MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. ("MLBFS"), and in connection therewith to grant to MLBFS liens and security interests on any or all property belonging to this Corporation; all such transactions to be on such terms and conditions as may be mutually agreed from time to time between this Corporation and MLBFS; and

"FURTHER RESOLVED, that the President, any Vice President, Treasurer, Secretary or other officer of this Corporation, or any one or more of them, be and each of them hereby is authorized and empowered to: (a) execute and deliver to MLBFS on behalf of this Corporation any and all loan agreements, promissory notes, security agreements, pledge agreements, financing statements, mortgages, deeds of trust, leases and/or all other agreements, instruments and documents required by MLBFS in connection therewith; and any present or future extensions, amendments, supplements, modifications and restatements thereof; all in such form as any such officer shall approve, as conclusively evidenced by his or her signature thereon, and (b) do and perform all such acts and things deemed by any such officer to be necessary or advisable to carry out and perform the undertakings and agreements of this Corporation in connection therewith; and any and all prior acts of each of said officers in these premises are hereby ratified and confirmed in all respects; and

"FURTHER RESOLVED, that MLBFS is authorized to rely upon the foregoing resolutions until it receives written notice of any change or revocation from an authorized officer of this Corporation, which change or revocation shall not in any event affect the obligations of this Corporation with respect to any transaction conditionally agreed or committed to by MLBFS or having its inception prior to the receipt of such notice by MLBFS.

The undersigned further certifies that: (a) the foregoing resolutions have not been rescinded, modified or repealed in any manner, are not in conflict with any agreement of said Corporation and are in full force and effect as of the date of this Certificate, and (b) the following individuals are now the duly elected and acting officers of said Corporation and the signatures set forth below are the true signatures of said officers:

President: _____  SAM KOHC

Vice President: _____  CAREN KOHL

Treasurer: _____  SAM KOHC

Secretary: _____  SAM KOHC

_____
Additional Title

IN WITNESS WHEREOF, the undersigned has executed this Certificate and has affixed the seal of said Corporation hereto, pursuant to due authorization all as of this ___ day of _____, 2002.

(Corporate Seal)

_____
Secretary

Printed Name: SAM KOHC

EXHIBIT E

 **Merrill Lynch**

UNCONDITIONAL GUARAN

FOR VALUE RECEIVED, and in order to induce MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. ("MLBFS") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with WELKO, INC., a corporation organized and existing under the laws of the State of New York (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "Customer") under: (a) that certain **TERM LOAN AND SECUR** **AGREEMENT DATED AS OF OCTOBER 11, 2006** between MLBFS and Customer (the "Loan Agreement"), (b) any "Loan Documents", as that term defined in the Loan Agreement including, without limitation, the NOTE(S) incorporated by reference in the Loan Agreement, and (c) all present and fut amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Lo Documents (collectively, the "Guaranteed Documents"), the undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS: (i) the prompt a full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Documen (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in t Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLB howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "Obligations"). Guarantor further agrees to pay reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution a delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly pa performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of th indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understoo however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically becor due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in f force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidate declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a truste receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effecti or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to l satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

Guarantor acknowledges and agrees that this Guaranty is a legal, valid and binding obligation of Guarantor, and is enforceable in accordance with its ter by MLBFS and that Guarantor has no defense (including without limitation, suretyship and those defenses arising if the Obligations are secured by real personal property), counterclaim or right of set-off which would affect MLBFS' ability to enforce this Guaranty and, to the extent that Guarantor has ar defense, counterclaim or right of set-off, Guarantor hereby waives all such defenses, counterclaims and rights of set-off.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS fro time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guarantee Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guarantee Documents; (b) any acceptance, enforcement, exchange, waiver or release by MLBFS of any collateral or security for, or other guarantees of, any of th Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security theref or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under th control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any defense, counterclaim or right of set-off by Customer a invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in th Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any o their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to ar collateral or pursue or exhaust any other rights or remedies whatsoever. Guarantor is responsible for being and keeping himself informed of Customer financial condition and MLBFS has no duty to provide any such information to any Guarantor.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless an until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives all presentments, protests, demands, notice of presentment, protest, demand, dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guarantee Documents or otherwise, notices of sale or real or personal property and all other notices and formalities to which Customer or Guarantor might be entitle by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revok or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquire whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise, and Guarantor expressly waives an all and rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available to guarantors under any federal or state law. Further, Guarantor acknowledges that all or a portion of present or future Obligations may be secured by rea and/or personal property, and MLBFS' election of rights and remedies in connection with the Obligations may impair or destroy both MLBFS' rights an remedies against Customer or any other guarantor and Guarantor's rights and remedies (including without limitation rights of subrogation) against Custome

or any security which MLBFS now has or hereafter acquires, whether such rights and remedies arise under equity, contract, statue, common law, or otherwise. Nevertheless, Guarantor waives all rights and defenses that Guarantor may have because Customer's Obligations are secured by real prope This means, among other things: (a) MLBFS may collect from Guarantor without first foreclosing on any real or personal property collateral pledged Customer; (b) if MLBFS forecloses on any real property collateral pledged by Customer: (i) the amount of the Obligations may be reduced only by the p for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) MLBFS may collect from Guara even if MLBFS, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Customer. This is an unconditi and irrevocable waiver of any rights and defenses Guarantor may have under any federal or state law, including, without limitation, any laws of the stat which any real property collateral or Guarantor is located, because Customer's Obligations are secured by real property. Further, MLBFS waives all rig and defenses arising out of an election of remedies by MLBFS, even though that election of remedies, such as a nonjudicial foreclosure with respec security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of any fed or state law, including, without limitation, any laws of the state in which any real property collateral or Guarantor is located. Guarantor authorizes MLBFS its option, without notice or demand and without affecting the liability of Guarantor under this Guaranty, to exercise, in MLBFS' discretion, any right a remedies, or any combination thereof, whether arising under equity, contract, statue, common law or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any other the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accoun financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLB or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates. Guarantor hereby collatera assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and duri the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under applicable laws, including, without limitation, the Uniform Commercial Code.

For so long as there are any Obligations: (i) Guarantor agrees to promptly furnish to MLBFS such financial information concerning Guarantor as may required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request; and (ii) Guarantor irrevocably authoriz MLBFS to obtain from, investigate or make inquiries of former or current creditors, credit-reporting agencies or other persons (including without limitatic any of MLBFS' affiliates), and provide to any creditors or other persons (including without limitation, any of MLBFS' affiliates) any and all financial, credit a other information regarding or relating to Guarantor obtained by MLBFS.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt fro execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarant will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt fro execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall opera as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in a number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterpart taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and person representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

Guarantor acknowledges that Guarantor (a) has had ample opportunity to consult with its own counsel and any such other persons as deemed advisabl prior to signing and delivering this Guaranty, (b) understands the provisions of this Guaranty, including all waivers contained herein, and (c) signs an delivers this Guaranty freely and voluntarily, without duress or coercion.

This Guaranty shall be governed by the laws of the State of Illinois. WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN AN JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (i) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION O MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER O ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (ii) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES AND (iii) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUC FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STAT E TO FEDERAL COURT. GUARANTOR FURTHER WAIVES AN RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICT ION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING O COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJEC

MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS. Where possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, with invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guar shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of October 11, 2006.

Guarantor:

Address:

PU EAST END AVE

SAM KOHL

Witness:

Printed Name:    JOSEPH BARNED

 **Merrill Lynch**

UNCONDITIONAL GUARA

FOR VALUE RECEIVED, and in order to induce MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC. ("MLBFS") to advance moneys or exten continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations WELKO, INC., a corporation organized and existing under the laws of the State of New York (with any successor in interest, including, without limitation successor by merger or by operation of law, herein collectively referred to as "Customer") under: (a) that certain TERM LOAN AND SECUI AGREEMENT DATED AS OF OCTOBER 11, 2006 between MLBFS and Customer (the "Loan Agreement"), (b) any "Loan Documents", as that te defined in the Loan Agreement including, without limitation, the NOTE(S) incorporated by reference in the Loan Agreement, and (c) all present and f amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the l Documents (collectively, the "Guaranteed Documents"), the undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS: (i) the prompt full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Docum (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLE howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "Obligations"). Guarantor further agrees to pa reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavorin collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly p performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understc however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically beco due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidat declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trus receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effect or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

Guarantor acknowledges and agrees that this Guaranty is a legal, valid and binding obligation of Guarantor, and is enforceable in accordance with its te by MLBFS and that Guarantor has no defense (including without limitation, suretyship and those defenses arising if the Obligations are secured by real personal property), counterclaim or right of set-off which would affect MLBFS' ability to enforce this Guaranty and, to the extent that Guarantor has defense, counterclaim or right of set-off, Guarantor hereby waives all such defenses, counterclaims and rights of set-off.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS fr time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guarante Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guarantee Documents; (b) any acceptance, enforcement, exchange, waiver or release by MLBFS of any collateral or security for, or other guarantees, of any of t Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security theref or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under t control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any defense, counterclaim or right of set-off by Customer invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; ( any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in th Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to a collateral or pursue or exhaust any other rights or remedies whatsoever. Guarantor is responsible for being and keeping himself informed of Customer financial condition and MLBFS has no duty to provide any such information to any Guarantor.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless a until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives all presentments, protests, demands, notic of presentment, protest, demand, dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guarantee Documents or otherwise, notices of sale or real or personal property and all other notices and formalities to which Customer or Guarantor might be entitle by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revol or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contributio indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquire whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise, and Guarantor expressly waives an and all rights of subrogation, reimbursement, indemnification and contribution and any other rights and defenses that are or may become available t guarantors under any federal or state law. Further, Guarantor acknowledges that all or a portion of present or future Obligations may be secured by re and/or personal property, and MLBFS' election of rights and remedies in connection with the Obligations may impair or destroy both MLBFS' rights an remedies against Customer or any other guarantor and Guarantor's rights and remedies (including without limitation rights of subrogation) against Custome



or any security which MLBFS now has or hereafter acquires, whether such rights and remedies arise under equity, contract, statue, common law or otherwise. Nevertheless, Guarantor waives all rights and defenses that Guarantor may have because Customer's Obligations are secured by real property or otherwise. This means, among other things: (a) MLBFS may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Customer; (b) If MLBFS forecloses on any real property collateral pledged by Customer: (i) the amount of the Obligations may be reduced only by the p for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (ii) MLBFS may collect from Guara even if MLBFS, by foreclosing on the real property collateral, has destroyed any right Guarantor may have to collect from Customer. This is an uncondit and irrevocable waiver of any rights and defenses Guarantor may have under any federal or state law, including, without limitation, any laws of the stat which any real property collateral or Guarantor is located, because Customer's Obligations are secured by real property. Further, Guarantor waives all ri and defenses arising out of an election of remedies by MLBFS, even though that election of remedies, such as a nonjudicial foreclosure with respec security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of any fed or state law, including, without limitation, any laws of the state in which any real property collateral or Guarantor is located. Guarantor authorizes MLBFS its option, without notice or demand and without affecting the liability of Guarantor under this Guaranty, to exercise, in MLBFS' discretion, any right remedies, or any combination thereof, whether arising under equity, contract, statue, common law or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any othe the Guaranteed Documents or in respect of any of the Obligations, without demand or notice of any kind, to appropriate, hold, off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accou financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLB or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates. Guarantor hereby collater assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and dur the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under applicable laws, including, without limitation, the Uniform Commercial Code.

For so long as there are any Obligations: (i) Guarantor agrees to promptly furnish to MLBFS such financial information concerning Guarantor as may required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request; and (ii) Guarantor irrevocably authoriz MLBFS to obtain from, investigate or make inquiries of former or current creditors, credit-reporting agencies or other persons (including without limitati any of MLBFS' affiliates), and provide to any creditors or other persons (including without limitation, any of MLBFS' affiliates) any and all financial, credit a other information regarding or relating to Guarantor obtained by MLBFS.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt fr execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guaran will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt fr execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall oper as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in a number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterpa taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and perso representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

Guarantor acknowledges that Guarantor (a) has had ample opportunity to consult with its own counsel and any such other persons as deemed advisab prior to signing and delivering this Guaranty, (b) understands the provisions of this Guaranty, including all waivers contained herein, and (c) signs a delivers this Guaranty freely and voluntarily, without duress or coercion.

This Guaranty shall be governed by the laws of the State of Illinois. WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN A JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (i) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION C MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER C ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (ii) GUARANTOR IRREVOCABLY SUBMITS ITSELF T JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSE AND (iii) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUC FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES A RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOI MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING C COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING T ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJE

MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS. Where possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, with invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of October 11, 2006.

Guarantor:

Address:

_PO EAST END AVE_

_Caren Kohl_
CAREN KOHL

Witness:

Printed Name: _JOSEPH BARNETT_

EXHIBIT H

Cohen Tauber Spievack & Wagner LLP
Attorneys for Defendants
420 Lexington Avenue
Suite 2400
New York, New York 10170
Leo L. Esses (LE-1173)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

Merrill Lynch Business Financial Services, Inc.,

Plaintiff

         -against-                        Case No. 07 CV 3900 (GBD)

Welko, Inc., Sam Kohl, Caren Kohl and "John
Doe #1" through "John Doe #12"

Defendants


----------------------------------------------------------X


## ANSWER

      Defendants Welko, Inc., Sam Kohl and Caren Kohl, as and for their answer to the

complaint in the above-captioned Civil Action, respectfully allege as follows:

      1. Deny information and belief as to the truth of the allegations set forth in

Paragraph "1" of the Complaint, but allege that the transaction which is the subject of this

lawsuit originated with Plaintiff's affiliate, Merrill, Lynch, Pierce, Fenner & Smith

Incorporated ("MLPF&S"), which remains a real party (though unnamed) in interest

herein and which, upon information and belief, has its principal place of business in New

York, New York.

2. Deny the allegations set forth in Paragraph "2" of the Complaint, except admits that Defendant Welko, Inc. ("Welko") formerly had a place of business at the address described.

3. Admit the allegations set forth in Paragraphs "3" and "4" of the Complaint.

4. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "5" of the Complaint, and has no knowledge as to the states of citizenship (for diversity purposes) of Defendants "John Doe #1" through "John Doe #12.

5. Deny the allegations contained in Paragraph "6" of the Complaint, and in particular any allegation of diversity jurisdiction.

6. Deny the allegations contained in Paragraph "7" of the Complaint, except admit that venue would be proper if there were subject matter jurisdiction of action.

7. Admit the allegations contained in Paragraph "8" of the Complaint, except alleges that, by its terms, MLPF&S was a party to the referenced agreement.

8. Admit the allegations contained in Paragraphs "9" through "16", inclusive.

9. Deny the allegations contained in Paragraph "17" of the Complaint, except admit that S. Kohl gave the referenced guaranty. The purported signature of C. Kohl on her guaranty is not genuine, and was affixed, upon information and belief, without her permission.

10. Admit the allegations contained in Paragraphs "18" through "20".

11. Deny the allegations contained in Paragraphs "21" through "30", inclusive.

## FOR A FIRST AFFIRMATIVE DEFENSE

12.  The Court lacks subject matter jurisdiction of this case, in that complete diversity between the parties is lacking.

## FOR A SECOND AFFIRMATIVE DEFENSE

13.  The Court lacks personal jurisdiction over Defendants C. Kohl and S. Kohl, due to inadequate service of process.

## FOR A THIRD AFFIRMATIVE DEFENSE

14.  The unauthorized and not genuine signature of Defendant C. Kohl on the 2006 Guaranty raises the possibility that circumstances surrounding the affixing thereof would, Defendants submit, render the entire transaction null and void.

WHEREFORE Defendants respectfully demand judgment in their favor and against Plaintiff: (a) dismissing the Complaint; and (b) granting such other and further relief as is just and proper.

Dated: New York, New York
        June 20, 2007

            COHEN TAUBER SPIEVACK &WAGNER LLP

By: _____

       Leo L. Esses (LE-1173)
       420 Lexington Avenue
       Suite 2400
       New York, NY  10170
       Tel: (212) 586-5800
       Fax: (212) 586-5095
       lesses@ctswlaw.com
       *Attorneys for Defendants*